TRULINCS ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ - Unit: BRO-E-A

---

FROM: ▓▓▓▓
TO: ▓▓▓▓
SUBJECT: CLERK
DATE: 11/02/2014 07:17:01 PM

**14CV8844**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

REGINA LEWIS

    Plaintiff,

-v-

NISSAN MOTOR ACCEPTANCE CORPORATION,
NEWBURGH NISSAN CAR DEALERSHIP,
GEORGE HARTE,

    Defendants,

COMPLAINT


NOV - 4 2014
PRO SE OFFICE

---

On or around March 6, 2012 I was the victim of a predatory loan that emerged into consumer fraud. According to the record in the related case 04-cv-562 two weeks after I was driven off the car lot with a new 2002 standard Nissan Exterra without any contractual paperwork, the dealership was contacted by NMAC with an urgent memo via fax instructing the sales manager to contact me immediately for the following reasons:

1. Important contractual documents were missing
2. Important contractual documents were unsigned by me
3. The dealership was not authorized to inflate my finance rate and was instructed to refund the overage

I was not provided with any paperwork during closing nor thereafter by the either the dealership or NMAC and this constitutes non-disclosure. I never signed an official completed contract at the dealership. During the entire process I was only provided with a receipt for the $100.00 I gave to hold the vehicle listed at $18,964 until I could provide the remaining $1,900 down payment. I had no knowledge that the vehicle cash price would be inflated to $22,701.26. Neither NMAC nor the Nissan Dealership contacted me over the urgent matters. After a dispute over the details and inflated vehicle cash price with NMAC I was finally provided with a shrunken version of the contract by NMAC and forwarded to the dealership where after police intervention I was finally provided with a few forged documents and two different contracts. According to the record the dealership inflated the vehicle cash price. The sticker MSRP was $18,964.

According to the calculations neither the $100.00 deposit nor the $1,900 down payment nor the $1,000 incentive deductable or the $500.00 rebate were used to reduce the sticker MSRP vehicle cash price and amount financed. Instead the vehicle cash price was inflated to $22,701.26 and the finance charge was $10,272.26 totaling $32,973 without any deductions at $549.99 for monthly payments. Later on during discovery the dealership produced photocopied documents to justify the fraud through additional inflated charges for un-purchased products such as side rails retailing at $300.00 inflated to $2,400 and (Trackgaurd) for $500.00. The receipt I received for my $100.00 stipulates that the vehicle was being held for a cash price at $18,964 until I provide the remaining $1,900 down payment and before all other final deductions were applied.

The fact that the dealership faxed missing and unsigned contractual documents to NMAC and NMAC accepted them and entered into a contract with me and then according to their disclosure during discovery faxed an urgent memo to the dealership stipulating important missing and documents that were unsigned weeks after I had the vehicle and then proceeded no further to correct the matter and collect payments constitutes wire fraud. According to the record, I specifically called the dealership inquiring of a vehicle under $20,000. The record also shows that I was invited in with a $1,000 deduction off the MRSP bringing the cash price down to $17,964 for the 2002 Nissan Exterra. The record also shows that I gave a $100.00 deposit that should have made the deduction at that point $17,963 for the cash price before the $1,900 down payment and $500.00 rebate. Ultimately making the vehicle cash price $15,464 to be taxed and financed. No record has ever been produced during discovery that I agreed to pay an inflated vehicle cash price of $22,701.26.

The record stipulates a vehicle cash price of $18,964 before deductions. NMAC enforced an unenforceable contract that should have been completely rescinded and recalculated. My contract was with NMAC and it was NMAC's responsibility to notify me and to make the correct adjustments and re-contract. Furthermore, any additional contracts sold to me such as the extended

TRULINCS ▮▮▮▮▮ - ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ - Unit: BRO-E-A

---

warranty for $1,900 was sold to me without disclosure to me as well and was completely worthless on a new vehicle covered by a manufacturers five year warrantee or a one hundred thousand mile guarantee. If you now deduct the $1,900 extended warrantee this brings the vehicle cash price down to $13,364. No deductions were ever applied to the amount financed and the amount financed was grossly over charged.

According to NYS Attorney General Mark Hoops in 2002 the Newburgh Nissan Dealership was not licensed to sell Trackguard or any additional insurance products. Mark Hoops in the same news article also stated that trackgaurd was a non-existent product and ordered the defendants to pay back thousands of dollars to local consumers and fined the Newburgh Nissan Car dealership $100,000. The dealership did not comply nor did Mark Hoops. There is no evidence that I threatened the dealership nor their counsel. Furthermore, NMAC, Newburgh Nissan and each defendant are all individuals. No evidence exists that suggest that I even remotely threatened each and every defendant and each and every defendant's counsel so the dismissal against every defendant with no final disposition and with prejudice was in plain error.

No defendant in particular is specified in the ridiculous suggestion in the memorandum and order of Katz identifying who out of over twenty defendants that I allegedly threatened during pre-trial proceedings. I flew in from Georgia for deposition. I had to barrow money to travel to New York for three days because of the long drawn out process of the defendants counsel who was racking up fees. The trip caused an extra ordinary hardship that delayed my return to Georgia and I wound up living with no electricity or heat during the winter months. I was perfect a lady and the deposition transcripts prove this. In 2002 according to more articles about NMAC the corporation was ordered to pay thousands of dollars in restitution to thousands of African Americans and Hispanic minorities for predatory lending and agreed to cease predatory lending according to settlement agreements and the actual attorney who handled the class action law suit. These facts have been over looked or ignored, this is an entirely new filing. Wherefore, I pray for compensatory and punitive damages against each defendant in sum of $10,000,000,00 (TEN MILLION DOLLARS) and whatever else the court may deem just and proper. The unresolved issue has led to numerous arrest, mental anguish, defamation of my character and my criminalization I am appealing.

*Regina Lewis*
November 3, 2014